# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42529-7-II |
| Appellant, | |
| v. | |
| RUSSELL DAVID HOMAN, | PUBLISHED OPINION |
| Respondent. | |

MAXA, J. — Russell Homan appeals his conviction for luring under RCW 9A.40.090.  He argues that RCW 9A.40.090 is unconstitutionally overbroad both facially and as applied to the facts of his case.  We hold that the luring statute as written is facially overbroad.  However, pursuant to our obligation to adopt a limiting construction that will render the statute constitutional, we imply a criminal intent element for the crime of luring under RCW 9A.40.090.  Because the trial court was not aware that it was required to find criminal intent in order to convict Homan, we reverse Homan's conviction and remand for a new trial.

## FACTS

In August 2010, Homan rode past nine-year-old CCN on his bicycle and said "[D]o you want some candy?  I've got some at my house."  Clerk's Papers (CP) 3-4.  CCN said nothing in response, but reported the incident to his mother and the police.  Homan was charged and convicted of luring under RCW 9A.40.090 in a bench trial.

Homan appealed his conviction, arguing that there was insufficient evidence to support his conviction and that RCW 9A.40.090 was unconstitutionally overbroad.  This court held that there was insufficient evidence to support Homan's luring conviction, and therefore did not reach

No. 42529-7-II

Homan's overbreadth argument. *State v. Homan*, 172 Wn. App. 488, 492-93, 290 P.3d 1041

(2012), *rev'd*, 181 Wn.2d 102, 330 P.3d 182 (2014). The State appealed to the Supreme Court.

The Supreme Court held that there was sufficient evidence to support Homan's luring

conviction, and remanded the case to this court to determine whether RCW 9A.40.090 is

unconstitutionally overbroad. *Homan*, 181 Wn.2d at 110-11.

ANALYSIS

A.    STATUTORY LANGUAGE

RCW 9A.40.090 provides in part, that a person commits the crime of luring if the person:

(1)(a) Orders, lures, or attempts to lure a minor or a person with a developmental disability into any area or structure that is obscured from or inaccessible to the public, or away from any area or structure constituting a bus terminal, airport terminal, or other transportation terminal, or into a motor vehicle;

(b) Does not have the consent of the minor's parent or guardian or of the guardian of the person with a developmental disability; and

(c) Is unknown to the child or developmentally disabled person.

(2) It is a defense to luring, which the defendant must prove by a preponderance of the evidence, that the defendant's actions were reasonable under the circumstances and the defendant did not have any intent to harm the health, safety, or welfare of the minor or the person with the developmental disability.

For purposes of this statute, "minor" refers to a person under the age of 16 and a "person

with a developmental disability" means a person with a developmental disability as

defined in RCW 71A.10.020(5). RCW 9A.40.090(3)(a)-(b).

The legislature has not defined the terms "lure" and "luring." *State v.*

*McReynolds*, 142 Wn. App. 941, 947, 176 P.3d 616 (2008). However, case law defines

"lure" as an invitation accompanied by an enticement. *Homan*, 181 Wn.2d at 107; *State*

*v. Dana*, 84 Wn. App. 166, 176, 926 P.2d 344 (1996).

2

RCW 9A.40.090 does not require a defendant to engage in any conduct to commit the crime of luring. *Homan*, 181 Wn.2d at 108. Luring may be committed with words alone. *Id.* In addition, RCW 9A.40.090 as written contains no criminal intent requirement. *Dana*, 84 Wn. App. at 175.

B.      FACIAL OVERBREADTH CHALLENGE

Homan argues that RCW 9A.40.090 is facially overbroad under the First Amendment because it criminalizes a substantial amount of constitutionally protected speech.[1] The State argues that although RCW 9A.40.090 does apply to some constitutionally protected speech, it does not prohibit a substantial amount of such speech. The State also argues that the affirmative defense in RCW 9A.40.090(2) cures any overbreadth problems. We hold that the statute as written is facially overbroad and that the affirmative defense in RCW 9A.40.090(2) does not cure the statute's overbreadth.

1.      Burden of Proof

A facial challenge to a law on First Amendment grounds does not require us to address the specific facts of the case – whether the defendant's actual speech was constitutionally protected. *State v. Immelt*, 173 Wn.2d 1, 7, 267 P.3d 305 (2011). The question is whether the law improperly infringes on protected speech in general. *Id.*

We presume that statutes are constitutional, and the party challenging the statute generally bears the burden of proving its unconstitutionality. *Id.* at 6. However, the Supreme Court in *Immelt* stated that the burden shifts when a statute is challenged in the free speech

---

[1] The American Civil Liberties Union (ACLU) filed an amicus brief that makes similar arguments.

context, and the State usually bears the burden of justifying a statute that restricts free speech.

173 Wn.2d at 6; *see also Voters Educ. Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 482,

166 P.3d 1174 (2007). The Supreme Court in this case addressed this issue in a footnote in this

case when responding to the dissent's suggestion that Homan had the burden of proof:

> [W]e take issue with portions of the dissent's First Amendment analysis. First, it is true that we generally presume that legislative enactments are constitutional and the party challenging a statute bears the burden of proving its unconstitutionality. Dissent at 113. However, in the free speech context, " 'the State usually bears the burden of justifying a restriction on speech.' "

*Homan*, 181 Wn.2d at 111 n.7 (quoting *Immelt*, 173 Wn.2d at 6).

Because Homan is challenging RCW 9A.40.090 as an infringement on free speech, the

State bears the burden of justifying the statute's restriction on protected speech.

2.   Legal Principles

The First Amendment to the United States Constitution, which applies to the states

through the Fourteenth Amendment's due process clause, provides in relevant part that

"Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend. I;

amend. XIV, § 1; *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 155 L. Ed. 2d 535

(2003).[2] Whether a statute is unconstitutionally overbroad under the First Amendment presents a

question of law, which we review de novo. *Immelt*, 173 Wn.2d at 6.

A law is unconstitutionally overbroad under the First Amendment if two requirements are

satisfied. First, the law must actually implicate constitutionally protected speech. *Id*. at 7. A

---

[2] Article I, section 5 of the Washington Constitution contains a similar provision: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Homan focuses only on the First Amendment. In any event, the analytical approach under article I, section 5 follows the same analysis as under the First Amendment. *Immelt*, 173 Wn.2d at 6.

defendant may invoke the First Amendment only if a law places some burden on free speech. *Id*. The First Amendment does not extend to "unprotected speech." *See State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013) ("true threats" are unprotected speech).

Second, the law must prohibit a *substantial* amount of constitutionally protected speech. *Immelt*, 173 Wn.2d at 6, 11. " '[W]e have vigorously enforced the requirement that a statute's overbreadth be *substantial,* not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.' " *Id.* at 11 (quoting *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)). The mere fact that some impermissible applications of a law are conceivable does not render that law unconstitutionally overbroad. *Immelt*, 173 Wn.2d at 11. There must be a realistic danger that the challenged law will significantly compromise recognized First Amendment protections. *Id.*

Determining whether a law prohibits a substantial amount of protected speech involves striking a balance between competing social interests. *Id*. "[W]e must weigh the amount of protected speech proscribed by the [law] against the amount of unprotected speech that the [law] legitimately prohibits." *Id*. The policy concern is that the threat of enforcement of a law prohibiting some amount of constitutionally protected speech will deter or chill such speech. *Id*. at 8.

3.    Overbreadth Analysis

We engage in a four-part analysis to determine whether a law is facially overbroad under the First Amendment. First, we must determine whether the challenged law actually prohibits speech. *See Immelt*, 173 Wn.2d at 7 (holding that horn honking may rise to the level of speech). Here, RCW 9A.40.090 clearly prohibits certain types of speech. The Supreme Court recognized

in this case that the crime of luring may be committed with words alone. *Homan*, 181 Wn.2d at 108.

Second, we must determine the legitimate sweep of the challenged law – whether the law *legitimately* prohibits certain speech. The First Amendment does not protect certain types of speech, including "libelous speech, fighting words, incitement to riot, obscenity, and child pornography," and true threats. *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004). A law that prohibits such unprotected speech does not violate the First Amendment. *See id*. at 43.

Another type of unprotected speech is speech made with the intent to facilitate criminal conduct. *See State v. Coleman*, 155 Wn. App. 951, 960-61, 231 P.3d 212 (2010) (accomplice liability statute's requirement that the defendant intend his or her speech to aid a crime avoids prohibiting protected speech); *see also City of Seattle v. Slack*, 113 Wn.2d 850, 855, 784 P.2d 494 (1989) (loitering in a public place with intent to commit prostitution-related crimes is not constitutionally protected). The United States Supreme Court has listed "speech integral to criminal conduct" as one of the traditional categories of unprotected speech.[3] *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010).

Courts in other jurisdictions specifically have concluded that the First Amendment does not protect speech in the furtherance of criminal conduct involving a child, particularly in the context of luring children either in person or over the Internet. *See, e.g.*, *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (holding that there is no First Amendment right to knowingly

---

[3] On the other hand, speech that merely advocates the violation of law, but is not itself integral to that violation, may be prohibited only if directed to inciting or producing imminent lawless action and is likely to incite or produce such action. *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969).

attempt to entice minors to engage in illegal sexual acts); *People v. Williams*, 551 N.E.2d 631, 634 (Ill. 1990) ("luring or attempted luring of a child into an automobile for a criminal purpose is in no way protected by the first amendment"); *People v. Ruppenthal*, 771 N.E.2d 1002, 1005-06 (Ill. App. Ct. 2002) (rejecting First Amendment challenge because knowingly attempting to solicit a person believed to be a child has no constitutional protection); *State v. Green*, 724 S.E.2d 664, 668 (S.C. 2012) (recognizing "speech used to further the sexual exploitation of children has been routinely denied constitutional protection as the State has a compelling interest in preventing the sexual abuse of children"); *State v. Robins*, 646 N.W.2d 287, 297 (Wis. 2002) (holding that the First Amendment does not protect child enticements, whether initiated over the Internet or otherwise).

Finding that speech made with the intent to facilitate criminal conduct is unprotected is consistent with RCW 9A.40.090's clear purpose of preventing a minor under age 16 or a developmentally disabled person from being alone with a stranger in a secluded place, where that vulnerable person could be abducted or harmed. *See Dana*, 84 Wn. App. at 175 (statute's legitimate sweep is the protection of minors under age 16 and the developmentally disabled). Undoubtedly, protecting particularly vulnerable members of the public from strangers who intend to harm them is an important and legitimate government interest. In furtherance of this interest, RCW 9A.40.090(1) can legitimately prohibit speech designed to lure minors under age 16 and developmentally disabled persons when that speech is made *with the intent to facilitate criminal conduct*. The First Amendment does not protect such speech.

Third, we must determine whether the challenged law also prohibits constitutionally protected speech. Although speech made with the intent to facilitate criminal conduct is

unprotected, "innocent" speech that falls within the definition of luring is protected. It is clear that RCW 9A.40.090(1) prohibits some protected speech.

Homan and the ACLU provide several examples of constitutionally protected speech that would violate RCW 9A.40.090(1). Homan identifies these scenarios: (1) political speech, where a student invites minors or developmentally disabled people to his or her house to discuss school district policies with an enticement of cupcakes; (2) a statement made in an attempt at humor by a student comedian at a talent show; (3) a genuine offer of help, where a good Samaritan offers to drive an injured child to the hospital for aid; (4) statements misunderstood as orders, where a school bus driver would be in violation for telling a child to "Hop in!" absent parental consent; and (5) an invitation from one child to another to play inside his or her home. Supp. Br. of App. at 4-5. Similarly, the ACLU identifies these scenarios: (1) an offer of help directing a lost child to an administrative office with the enticement of hot chocolate once they arrive, (2) a retail clerk asking a wandering child to come inside her store to play with the latest toys on sale, (3) a responsible person directing a bullied developmentally disabled person to a safe place and telling the person that he could watch his favorite movie until his guardian arrived, and (4) a librarian directing a minor patron to take the elevator to a different floor of the library to locate a book the minor is excited about reading.

In addition, Homan notes that RCW 9A.40.090(1) prohibits mere jests and idle talk. And the ACLU points out that a person could violate RCW 9A.40.090(1) by using hyperbole, such as telling someone to "take a long hike off a short pier" or to "go to the moon."[4] Br. of ACLU at

---

[4]These statements would violate RCW 9A.40.090(1) only if they constituted "orders." They would not constitute luring because there is no invitation or enticement.

12-13. The First Amendment prohibits criminalization of communications that are "merely jokes, idle talk, or hyperbole." *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010) (addressing "true threat" requirement).

Fourth, we must determine whether the challenged law prohibits a *substantial* amount of such speech. This involves weighing the amount of unprotected speech that the law legitimately prohibits against the amount of prohibited protected speech. *Immelt*, 173 Wn.2d at 11.

The State argues that Homan's and the ACLU's scenarios where RCW 9A.40.090(1) would infringe on protected speech are not enough to render the statute overbroad. The State refers to the rule that being able to conceive of impermissible applications of a law does not render that law unconstitutionally overbroad. *Immelt*, 173 Wn.2d at 11. The State claims that there is no "realistic danger" that the law will infringe on free speech. *Id*.

Here, RCW 9A.40.090(1) does not prohibit all orders or invitations made to a minor under age 16 or a developmentally disabled person. The order or invitation must (1) be made by a stranger, (2) be made without the consent of the child's or developmentally disabled person's parent or guardian, and (3) involve an attempt to get the child or developmentally disabled person to come to a motor vehicle or a place that is obscured from or inaccessible to the public. RCW 9A.40.090(1). And for an invitation, there must be some enticement. *Homan*, 181 Wn.2d at 107. These requirements limit to some extent the amount of protected speech that is prohibited. *See Dana*, 84 Wn. App. at 175 (stating that the impact of RCW 9A.40.090(1) on protected speech is minimal because luring requires an enticement as well as an invitation).

Further, Division One of this court held that RCW 9A.40.090 was not facially overbroad in *Dana*, 84 Wn. App. at 174-77. The court addressed the statute's impact on protected speech and held "[t]he impact on protected speech is minimal because a mere invitation, as noted above, is not sufficient. In order to constitute luring in violation of the statute, the invitation must include some other enticement or conduct constituting an enticement (or attempted enticement)." *Id*. at 175.

On the other hand, any speech falling within the definition of luring not made with the intent to facilitate criminal conduct (or falling within some other category of unprotected speech) is protected under the First Amendment. The absence of a criminal intent requirement in RCW 9A.40.090(1) means that the statute prohibits all of this protected speech.[5] As Homan's and the ACLU's examples demonstrate, the amount of unprotected speech that RCW 9A.40.090(1) prohibits may be substantial.[6]

---

[5] Courts in other jurisdictions specifically have held that enticement and luring statutes are not overbroad because of the statute's mens rea requirements. *See, e.g.*, *Bailey*, 228 F.3d at 639 (concluding that statute proscribing knowing efforts to persuade minors to engage in illegal sexual activity did not violate First Amendment); *State v. Ebert*, 263 P.3d 918, 922 (N.M. Ct. App. 2011) (concluding that statute criminalizing child solicitation by electronic communication device was not constitutionally overbroad as "[t]ailoring [was] primarily accomplished through the 'knowingly' scienter requirement"); *Green*, 724 S.E.2d at 668-69 (recognizing that criminal solicitation statute was narrowly tailored because it targeted only those who "knowingly" targeted minors for the purpose of engaging in sexual activity or a violent crime).

[6] Justice Owens disagreed in her dissent in this case, stating that "[r]ealistically, it is doubtful that the statute *significantly* compromises free speech." *Homan,* 181 Wn.2d at 115 (J. Owens, dissenting). She was not persuaded that there was a realistic danger that the statute would curtail protected speech, stating that Homan's "unrealistic concerns are outweighed by the State's strong interest in protecting its most vulnerable citizens." *Id.*

In *Immelt*, the Supreme Court addressed an ordinance that prohibited public disturbance noise, which included horn honking for purposes other than public safety or an official sanctioned parade or public event. 173 Wn.2d at 4-5. The court identified several scenarios in which a person honking a horn might be engaged in protected speech. *Id.* at 9. The court suggested that the ordinance probably could legitimately prohibit horn honking that is intended to annoy or harass. *Id.* at 12. However, it held that the ordinance was overboard because it "prohibits a wide swath of expressive conduct in order to protect against a narrow category of public disturbances." *Id.*

This case is similar to *Immelt*. RCW 9A.40.090 legitimately prohibits a specific type of speech – an order or invitation made to a minor under age 16 or a developmentally disabled person *with criminal intent*. However, in order to accomplish that purpose the statute prohibits a wide range of "innocent," protected speech. We conclude that RCW 9A.40.090 prohibits a substantial amount of protected speech.

Holding that RCW 9A.40.090 prohibits a substantial amount of protected speech requires us to disagree with Division One's decision in *Dana*. However, *Dana* does not control here for three reasons. First, the court held that the defendant in that case bore the burden of proof. 84 Wn. App. at 175. As discussed above, the Supreme Court now has clarified that in the First Amendment context, the State bears the burden of justifying a law's restriction on protected speech. *Immelt*, 173 Wn.2d at 6.

Second, the court in *Dana* did not consider the actual impact of RCW 9A.40.090 on a wide range of protected speech. The defendant in *Dana* apparently argued that the statute was overbroad only because it would criminalize an offer of a ride by an adult to minor. 84 Wn.

App. at 175. As noted above, the statute in fact infringes on a substantial amount of protected speech.

Third, the court in *Dana* did not engage in the type of detailed analysis outlined above. Instead, the court seemed to assume that RCW 9A.40.090 was not overbroad because only invitations involving enticement violated the statute. *Id.* at 175-76. But the court failed to discuss the fact that RCW 9A.40.090 still prohibited a broad range of protected speech.

4.    Effect of Affirmative Defense

The State argues that the affirmative defense provided in RCW 9A.40.090(2) prevents the statute from being overbroad. We disagree.

RCW 9A.40.090(2) states that it is an affirmative defense to luring if a defendant's actions were reasonable under the circumstances and the defendant had no intent to harm the minor or person with the developmental disability. However, RCW 9A.40.090(2) places the burden of proof on the defendant.

The United States Supreme Court has stated there are "serious constitutional difficulties [with] seeking to impose on the defendant the burden of proving his speech is not unlawful." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002). The Court noted that an affirmative defense applies only after a prosecution has begun, and at that point the speaker will be convicted if he or she cannot prove the defense.[7] *Id.*   Further, the Court in *Ashcroft v. American Civil Liberties Union* stated that where only an affirmative

---

[7]In *Ashcroft v. Free Speech Coalition*, the Court did not need to decide whether a law could impose this burden on a speaker. 535 U.S. at 255.

defense is available to avoid conviction for protected speech, "speakers may self-censor rather than risk the perils of trial." 542 U.S. 656, 670-71, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004).

In *State v. Romage*, the Supreme Court of Ohio held that its luring statute was unconstitutionally overbroad even though a person charged under the statute could assert the affirmative defense that he or she "undertook the activity in a reasonable belief that it was necessary to preserve the health, safety, or welfare of the child." 7 N.E.3d 1156, 1161 n.2 (Ohio 2014) (quoting OHIO REV. CODE ANN. § 2905.05(D)). While the court recognized that a charged defendant could assert the affirmative defense, it reasoned that "[n]evertheless, one may be indicted when motivation is innocent." *Id.*

No Washington court has determined whether an affirmative defense for which the defendant has the burden of proof can "cure" an overbroad law. However, the Supreme Court in this case addressed this issue in response to the dissent's reliance on the affirmative defense in its analysis of RCW 9A.40.090.[8] The court stated:

> [W]e question whether the affirmative defense protects the statute from an overbreadth challenge . . . because it applies only after the prosecution has begun. Accordingly, it alleviates neither the risk that protected speech will be "chilled" nor the danger of selective enforcement.

*Homan*, 181 Wn.2d at 111 n.7 (citing *Ashcroft v. Free Speech Coal.*, 535 U.S. at 255).

Here, individuals who meet the elements of RCW 9A.40.090(1) can be charged with the crime of luring even if their motivations are entirely innocent. These individuals must either rely on the mercy of an understanding prosecutor, or repress speech that meets the elements of RCW

---

[8] In her dissent, Justice Owens stated that "[w]hether or not [RCW 9A.40.090(2)] protects the statute from an overbreadth challenge on its own, it weighs on the side of validity because it significantly limits the realistic danger that the luring statute will significantly compromise recognized free speech." *Homan*, 181 Wn.2d at 115 (Owens, J., dissenting).

9A.40.090(1) to avoid being pulled into the criminal justice system. And the risk that a person may not be able to prove the affirmative defense creates a realistic danger of chilling speech. Accordingly, we hold that the affirmative defense cannot save RCW 9A.40.090 from its overbreadth. RCW 9A.40.090 is unconstitutional despite the affirmative defense.

5. Conclusion

Ultimately, the State has the burden of justifying RCW 9A.40.090's infringement on protected speech. The State has not met that burden here. RCW 9A.40.090 prohibits an unacceptable amount of protected speech. We conclude that, as written, RCW 9A.40.090 is substantially overbroad under the First Amendment.

C. LIMITING CONSTRUCTION

Finding that RCW 9A.40.090 as written is facially overbroad does not end our analysis. The longstanding rule in Washington is that a reviewing court has an "*obligation* to construe the [law] *if possible* in such a manner as to uphold its constitutionality." *City of Bellevue v. Miller*, 85 Wn.2d 539, 547, 536 P.2d 603 (1975) (emphasis added). A law that criminalizes pure speech must be interpreted in light of the First Amendment protections. *State v. Williams*, 144 Wn.2d 197, 207, 26 P.3d 890 (2001). As a result, an overbroad law " 'will be overturned only if the court is unable to place a sufficiently limiting construction on a standardless sweep of legislation.' " *Immelt*, 173 Wn.2d at 6-7 (quoting *City of Tacoma v. Luvene*, 118 Wn.2d 826, 840, 827 P.2d 1374 (1992)).

Homan argues that we should imply a criminal intent element to prevent RCW 9A.40.090(1) from being unconstitutionally overbroad.[9] We agree.

Reviewing courts generally do not adopt a limiting construction unless the challenged law's language provides a sufficient basis for such a construction. *Immelt*, 173 Wn.2d at 12-13. On the other hand, our Supreme Court has adopted implied elements of crimes without searching the statutory language. For example, the court repeatedly has adopted an implied "true threat" element when interpreting statutes prohibiting threatening speech despite the absence of statutory language supporting such an implied element. *See, e.g.*, *Allen*, 176 Wn.2d at 626 (stating that "we interpret statutes criminalizing threatening language as proscribing only unprotected true threats").

In *State v. Johnston*, the court addressed RCW 9.61.160, which made it unlawful for any person to "threaten" to bomb or injure certain buildings. 156 Wn.2d 355, 360, 127 P.3d 707 (2006). The parties and the court agreed that the statute was overbroad as written unless it was given a limiting construction. *Id.* at 363-64. As a result, the court "construe[d] RCW 9.61.160 to avoid an overbreadth problem by limiting it to true threats." *Id.* at 364. However, this implied element of the crime was not derived from the statutory language, which unequivocally prohibited all threats rather than just "true threats." *Id.* at 360.

In *State v. Pauling*, the court considered the former extortion statutes, which made it unlawful to commit extortion by means of a threat. 149 Wn.2d 381, 387, 69 P.3d 331 (2003). The court held that the statute was unconstitutional as written because the definitions of extortion

---

[9] Homan also urges us to consider implying a "true attempt" element. Supp. Br. of App. at 8-9. We decline to adopt such a construction.

and threat contained no wrongfulness element. *Id.* at 389. However, the court adopted a limiting construction that implied a requirement that the threat be inherently wrongful – that there be no nexus between the threat and a claim of right. *Id.* at 391. Once again, the court did not base this implied element on the statutory language, which unequivocally prohibited all threats meeting the statutory definition.

In *State v. Williams*, the court addressed RCW 9A.76.020, which made it unlawful to willfully hinder, delay, or obstruct any law enforcement officer in the discharge of his or her duties. 171 Wn.2d 474, 477, 251 P.3d 877 (2011). In order to "avoid constitutional infirmities," the court adopted an implied requirement that the defendant engage in some conduct in addition to making false statements to support a conviction for obstructing an officer. *Id.* at 486. The court adopted this construction even though the legislature had not included a conduct requirement when rewriting RCW 9A.76.020, even though previous cases had imposed such a requirement. *Id.* at 482-83.

Here, we can cure the unconstitutional overbreadth of RCW 9A.40.090 by placing a limiting construction on the statutory language – implying a criminal intent element for the crime of luring. Under this construction, a person will be guilty under RCW 9A.40.090 only if the State proves that his or her conduct was done with the intent to harm the health, safety and welfare of the minor or person with a developmental disability.

Our limiting construction tracks the language of RCW 9A.40.090(2), which provides a defense to the crime of luring if the defendant can prove that he or she "did not have any intent to harm the health, safety, or welfare of the minor or the person with the developmental disability." Our limiting construction essentially renders this defense superfluous. However, we view RCW

9A.40.090(2) as an expression of legislative intent that a person can be guilty of luring only if he or she acted with criminal intent. As discussed above, RCW 9A.40.090 remains unconstitutional despite the legislature's affirmative defense because it places the burden of proving First Amendment protection on the defendant. To uphold the constitutionality of RCW 9A.40.090 and the legislature's intent, our limiting construction requires the State to prove criminal intent rather than requiring the defendant to prove the lack of criminal intent.

We have an obligation to interpret RCW 9A.40.090 in a manner that upholds its constitutionality if possible. Accordingly, we hold that RCW 9A.40.090 must be interpreted as containing an implied criminal intent element for the crime of luring – that the State must prove that the defendant's conduct was done with the intent to harm the health, safety and welfare of the minor or person with a developmental disability. When this limiting construction is applied to RCW 9A.40.090, the statute is not unconstitutionally overbroad under the First Amendment.

D.      REMEDY

Because we have adopted a limiting construction regarding RCW 9A.40.090, we must ensure that Homan was convicted under the statute as subsequently construed and not as it originally was written. *Williams*, 144 Wn.2d at 213. Because RCW 9A.40.090 is unconstitutional as written, there is a presumption that Homan has been prejudiced. *Id.* This presumption can only be overcome if the State can show beyond a reasonable doubt that any reasonable trier of fact would reach the same result without the error. *Id.*

Here, Homan was convicted as the result of a bench trial. Based on this record, it cannot be said that any reasonable trier of fact would have convicted Homan given the criminal intent requirement that we have adopted. The State did not produce direct evidence that Homan had

17

criminal intent, and we cannot say beyond a reasonable doubt that Homan would have been convicted had the trial court been required to find that Homan acted with criminal intent. As a result, the proper remedy is to reverse Homan's conviction and remand for a new trial.

We reverse Homan's conviction and remand for a new trial.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
LEE, J.