

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33988-2-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 34642-1-III) |
| v. | ) | |
| | ) | |
| NICOLAS MENDOZA-VERA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — A day after the superior court entered its judgment and sentence

convicting Nicolas Mendoza-Vera of one count of luring in violation of former RCW

9A.40.090 (2012), Division Two of this court held the statute unconstitutionally

overbroad unless construed to require proof that the person charged acted "with the intent

to harm the health, safety and welfare of the minor." *State v. Homan*, 191 Wn. App. 759,

777-78, 364 P.3d 839 (2015) (*Homan* III). In so holding, it disagreed with *State v. Dana*,

84 Wn. App. 166, 926 P.2d 344 (1996), in which Division One of this court had rejected an overbreadth challenge to the same statute.

In the prosecution of Mr. Mendoza-Vera on the luring count, the State and trial court did not treat criminal intent as an element of the crime but instead—as provided by the former statute—treated it as an affirmative defense that Mr. Mendoza-Vera was required to prove by a preponderance of the evidence.

Mr. Mendoza-Vera raises seven issues on appeal but only two require decision. We substantially agree with Division Two's decision in *Homan* III. Because the required criminal intent element cannot fairly be found in the State's charging document, we reverse Mr. Mendoza-Vera's conviction and remand with directions to dismiss the information without prejudice. We reject Mr. Mendoza-Vera's argument that we should reverse his conviction *with* prejudice on corpus delicti and evidence insufficiency grounds.

FACTS AND PROCEDURAL BACKGROUND

On an early evening in July 2015, Gricelda Zamora was at Lincoln Park in Wenatchee, where she had taken her seven-year-old and four-year-old daughters to play. Ms. Zamora sat at a picnic table a few meters from a slide and other toys while the girls played. Her four-year-old, K.P., ran back and forth between the toys and her mother, stopping to drink water at the table. On one of K.P.'s returns to the table, Nicolas Mendoza-Vera—a stranger to Ms. Zamora—approached and sat down at the table, asking

Ms. Zamora, "Is she your daughter?" Report of Proceedings (RP) at 49. Ms. Zamora

responded yes and then asked, "Why?" *Id.* Mr. Mendoza-Vera responded, "[T]hat's all,"

and got up and walked away. *Id.* Ms. Zamora told K.P. to return to her playing.

Ms. Zamora then took a telephone call from her boyfriend, who was looking for

her and the girls, after which she called to her daughters to return to the table. Only the

seven-year-old returned. According to Ms. Zamora, it had been only three to four

minutes since she had last seen K.P.

Ms. Zamora's boyfriend arrived and the two parted ways to search for K.P. Based

on information provided by a couple Ms. Zamora encountered across the park, she

walked toward Cashmere Street. Unable to find K.P. on the street and becoming

increasingly apprehensive about her daughter's safety, Ms. Zamora stopped to call 911.

She made the call from in front of a residence that had a trampoline in the side yard.

Although she had not seen K.P. or Mr. Mendoza-Vera in the yard up to this point, after

Ms. Zamora dialed the number and raised the phone to her face, she saw Mr. Mendoza-

Vera in the yard, with K.P. on his back, walking toward the park. According to Ms.

Zamora, K.P. yelled "Mommy, mommy" upon seeing her and looked scared. RP at 57.

Ms. Zamora yelled at Mr. Mendoza-Vera, asking, "Why did you take her?" to

which he responded that K.P. asked him for water. RP at 55. Ms. Zamora told him, "No,

that's not true because you saw when I was giving her water at the table." *Id.* She took

3

K.P.'s hand and then called her boyfriend to let him know she had located K.P. By the time she finished the call to her boyfriend, Mr. Mendoza-Vera had disappeared.

Officer Gary Geiger responded to Ms. Zamora's 911 call and located Mr. Mendoza-Vera at an apartment on Cashmere Street. In a matter of days, the State charged Mr. Mendoza-Vera with luring in violation of former RCW 9A.40.090 and with the aggravating circumstance that K.P. was particularly vulnerable.

After Mr. Mendoza-Vera's arrest, he agreed to a recorded interview by Detective Nathan Hahn. He told the detective he had been at a friend's apartment on Cashmere and had walked to the park to use the restroom because his friend was using the bathroom to take a shower. He claimed that after using the restroom, he stood at the playground area of the park for a few moments when K.P. approached him, asking for help finding her mother. According to him, he said he needed to return to his friend's and she asked to go with him. He claimed she was only with him for about 10 minutes, during which she jumped on the trampoline in the side yard of the apartment for a short time and then asked for some water. He said that when he got her a glass of water, people at his friend's apartment told him he needed to return the girl to the park, which is what he was doing when he was seen by Ms. Zamora.

According to the detective, Mr. Mendoza-Vera "was kind of wavering" in his story, but ultimately admitted that he knew K.P.'s mother was in the park, that he had "made a mistake" and "he was sorry." RP at 86, 89.

At Mr. Mendoza-Vera's trial, Ms. Zamora was called as the State's first witness, followed by Officer Geiger and Detective Hahn. Before Detective Hahn testified, and outside the presence of the jury, the defense objected to any testimony by the detective as to Mr. Mendoza-Vera's statements, arguing that the State had not established the corpus delicti of a crime. The trial court overruled the objection, finding that Ms. Zamora's testimony was sufficient corroboration of a luring offense.

The jury found Mr. Mendoza-Vera guilty as charged and returned a special verdict finding that he knew or should have known that K.P. was particularly vulnerable or incapable of resistance. The trial court initially sentenced Mr. Mendoza-Vera to 364 days' incarceration and 4 years of community custody but later declared its judgment void at the State's request, when it became apparent that community custody is not statutorily authorized for the crime. In resentencing Mr. Mendoza-Vera, the court imposed a sentence of 24 months' confinement.

Mr. Mendoza-Vera appeals.

## ANALYSIS

I.   LIBERALLY CONSTRUED, THE STATE'S INFORMATION DOES NOT IMPLY THE CRIMINAL INTENT THAT WE CONSTRUE FORMER RCW 9A.40.090 TO REQUIRE

For the first time on appeal, Mr. Mendoza-Vera argues that former RCW 9A.40.090 is facially overbroad unless construed to require proof of the intent identified in *Homan* III and, because the information charging him with luring did not allege that

5

essential element, it provided a constitutionally deficient basis for his prosecution. An information must contain all essential elements of an alleged crime in order to afford the accused notice of the nature of the allegations so that a defense can be properly prepared. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). Its constitutional sufficiency can be raised for the first time on appeal. *Id.* at 102.

Before the decision in *Homan* III and the legislature's subsequent amendment of the luring statute to require proof of criminal intent, former RCW 9A.40.090 provided in relevant part that a person commits the crime if he or she:

> (1)(a) Orders, lures, or attempts to lure a minor or a person with a developmental disability into any area or structure that is obscured from or inaccessible to the public . . . ;
> (b) Does not have the consent of the minor's parent or guardian or of the guardian of the person with a developmental disability; and
> (c) Is unknown to the child or developmentally disabled person.

It was a defense to luring that the defendant's actions were reasonable under the circumstances and the defendant did not have any intent to harm the health, safety, or welfare of the minor. Former RCW 9A.40.090(2). The defendant was required to prove the affirmative defense by a preponderance of the evidence. *Id.*

Russell Homan, the defendant in the Division Two case, appealed his conviction for luring, arguing in part that former RCW 9A.40.090 was facially overbroad in violation of his rights under the First Amendment to the United States Constitution. But he initially prevailed in Division Two on different grounds: he persuaded the appellate

court that the State's evidence was insufficient. Although Homan had stated to a 9-year-old boy as he rode past him on a child's BMX bicycle, "'Do you want some candy? I've got some at my house,'" Homan then rode on without slowing, stopping, or looking back. *State v. Homan*, 172 Wn. App. 488, 489, 290 P.3d 1041 (2012) (*Homan* I), *rev'd*, 181 Wn.2d 102, 330 P.3d 182 (2014). A majority of the three-judge panel characterized the statements as "ill-advised" but concluded "they did not constitute a felony." *Id.* at 493.

The Supreme Court accepted review and asked the parties to supplementally brief the First Amendment issue but provided only two weeks for the briefing. The Court ultimately reversed *Homan* I's decision that the evidence against Homan was insufficient, but chose not to reach the First Amendment issue, explaining that "[t]o make an informed decision on this complex First Amendment issue, we believe more briefing is necessary." *State v. Homan*, 181 Wn.2d 102, 104 n.3, 330 P.3d 182 (2014) (*Homan* II). It remanded the case to the Court of Appeals to decide the overbreadth issue.

While not deciding the issue of overbreadth, the Supreme Court's seven-member majority decision addressed the dissent of a single justice who would have reached the issue and found the luring statute constitutional.[1] The majority opinion's comments about the dissent reveal some reservations about the luring statute's constitutionality:

---

[1] One justice, Justice Mary Yu, did not participate in deciding the appeal. *Homan* II, 181 Wn.2d at 111.

> [I]t is true that we generally presume that legislative enactments are constitutional and the party challenging a statute bears the burden of proving its unconstitutionality. Dissent at 113. However, in the free speech context, "'the State usually bears the burden of justifying a restriction on speech.'" *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011) (internal quotation marks omitted) (quoting *Voters Educ. Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 482, 166 P.3d 1174 (2007)). Second, the dissent dismisses concerns that the statute will be applied against protected speech, finding that there is little possibility that innocent parties (a student inviting peers to his or her house, a good Samaritan offering a ride, a bus driver, etc.) will be prosecuted. Dissent at 115. But selective enforcement does not cure overbreadth. Indeed, a danger inherent in overbroad statutes is that such statutes provide unbridled administrative and prosecutorial discretion that may result in selective prosecution based on certain views deemed objectionable by law enforcement. *Little v. City of Greenfield*, 575 F. Supp. 656, 662 (E.D.Wis. 1983); see Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 YALE L.J. 853, 868 n.94 (1991) (rationale underlying overbreadth doctrine advances two goals: to prevent a "chilling effect[ ]" on free speech and to prevent selective enforcement of a statute, which would target and discriminate against certain classes of people). Last, we question whether the affirmative defense protects the statute from an overbreadth challenge (dissent at 115) because it applies only after prosecution has begun. Accordingly, it alleviates neither the risk that protected speech will be "chilled" nor the danger of selective enforcement.

*Homan* II, 181 Wn.2d at 111 n.7 (second alteration in original).

On remand, Division Two took heed of these points made by the Supreme Court majority. It also accepted numerous examples given by Homan and the American Civil Liberties Union of Washington, as amicus curiae, of constitutionally protected speech that would violate the former luring statute. Considering all, it concluded that without a limiting construction, the statute prohibited a substantial amount of protected speech.

8

The court recognized that the First Amendment does not protect speech made with the intent to facilitate criminal conduct, and reasoned that the statute could legitimately prohibit speech designed to lure minors under age 16 and developmentally disabled persons if made with that criminal intent. *Homan* III, 191 Wn. App. at 769. Responding to the obligation of courts to construe the law (if possible) in such a manner as to uphold its constitutionality, Division Two adopted a limiting construction, requiring that the State prove a defendant acted with the intent to harm the health, safety and welfare of the victim. The legislature responded by amending the statute to add a requirement that a person charged acted "with the intent to harm the health, safety, or welfare of the minor or person with a developmental disability or with the intent to facilitate the commission of any crime." LAWS OF 2016, ch. 11, § 1.

We find *Homan* III persuasive, particularly given that some of its reasoning was suggested by the Supreme Court majority in *Homan* II. We also question *Dana*'s reasoning that since the word "lure" has a meaning that requires not only an invitation but an invitation accompanied by an enticement, the luring statute's impact on protected speech should be minimal. 84 Wn. App. at 175-76. What adult has not used an enticement to coax a child, tween, or teen into doing something that is for their own good? We suspect that beneficent enticement is used more often with the classes of persons protected by the luring statute than with any others.

9

Our only quarrel with *Homan* III is with its construction of the statute as requiring

the State to prove conduct "done with the intent to harm the health, safety *and* welfare of

the minor or person with a developmental disability." 191 Wn. App. at 777-78 (emphasis

added). The limiting construction that we give the statute, consistent with the language

of the former affirmative defense, is that the State prove conduct done with the intent to

harm the health, safety *or* welfare of the minor or person with a developmental disability.

The State asks us to affirm Mr. Mendoza-Vera's conviction even if we follow

*Homan* III, relying on the liberal construction that we apply to a charging document when

its sufficiency is challenged after trial. An information is viewed more liberally when a

late challenge is made; otherwise, a defendant would have no incentive to make a timely

challenge that could be met by a curative amendment or dismissal and refiling. *Kjorsvik*,

117 Wn.2d at 103. Under the liberal construction rule, we uphold an information if an

apparently missing element may be fairly implied from language within the charging

document. *Id.* at 104-06.

The State argues that language in the information fairly implies a charge that Mr.

Mendoza-Vera intended to harm K.P.'s health, safety, or welfare. The information reads

as follows:

> That the said defendant in the State of Washington, on or about the 23rd
> day of July, 2015, a person unknown to K.P., a four year old female and
> minor child, did then and there unlawfully and feloniously attempt to lure a
> person under the age of 16, to wit: K.P., into an area or structure obscured
> from or inaccessible to the public and at such time the defendant was

10

> unknown to K.P., and lacked the consent [of] K.P.'s parents, and the defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance, thereby invoking the provisions of RCW 9.94A.535(3)(b); contrary to the form of the statute RCW 9A.40.090 in such cases made and provided and against the peace and dignity of the State of Washington.

Clerk's Papers (CP) at 8-9. The State emphasizes the language that Mr. Mendoza-Vera "*unlawfully and feloniously* attempt[ed] to lure a person under the age of 16, to wit: K.P." CP at 8 (emphasis added); *see* Br. of Resp't at 6-7.

Even liberally construed, we do not find the information sufficient. Conduct can be unlawful and felonious without requiring the criminal intent that we construe former RCW 9A.40.090 to require. The information identifies as elements only the facts stated, none of which fairly implies criminal intent.

The remedy required is reversal of Mr. Mendoza-Vera's luring conviction and remand with directions to dismiss the information without prejudice. *State v. Green*, 101 Wn. App. 885, 891, 6 P.3d 53 (2000).

II.     THE TRIAL COURT DID NOT ERR IN OVERRULING MR. MENDOZA-VERA'S OBJECTION TO ADMITTING STATEMENTS MADE TO DETECTIVE HAHN

Given our reversal and remand, only one other issue raised by Mr. Mendoza-Vera requires review. He argues that he is entitled to reversal of his conviction *with* prejudice, because the trial court erred when it overruled his corpus delicti objection and admitted statements he made to Detective Hahn. He argues that without his statements, the evidence is insufficient.

11

"The doctrine of corpus delicti protects against convictions based on false confessions, requiring evidence of the 'body of the crime.'" *State v. Cardenas-Flores*, 189 Wn.2d 243, 247, 401 P.3d 19 (2017) (quoting *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996) (internal quotation marks omitted). Under the corpus delicti rule, a defendant's confession alone is insufficient to convict and must be corroborated by independent evidence of guilt. *State v. Brockob*, 159 Wn.2d 311, 327-28, 150 P.3d 59 (2006)); *Aten*, 130 Wn.2d at 655-56. "[T]he State must present evidence independent of the incriminating statement that the crime a defendant *described in the* [*confession*] actually occurred." *Brockob*, 159 Wn.2d at 328. "[I]f no such evidence exists, the defendant's confession . . . cannot be used to establish the corpus delicti and prove the defendant's guilt at trial." *Aten*, 130 Wn.2d at 656.

"The corpus delicti can be proved by either direct or circumstantial evidence." *Id.* at 655. The evidence need not be evidence sufficient to support a conviction or even send the case to the jury. *Id.* However, evidence independent of the defendant's confession must be sufficient to provide prima facie corroboration of the crime allegedly committed. *Brockob*, 159 Wn.2d at 328. The corroborating evidence "'must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence.'" *Id.* at 329 (alteration in original) (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 660).

In determining whether there is sufficient evidence of the corpus delicti independent of the defendant's statements, this court assumes the "truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State." *Aten*, 130 Wn.2d at 658. "The evidence is sufficient if it supports a logical and reasonable inference of the facts the State seeks to prove." *Cardenas-Flores*, 189 Wn.2d at 264. We review a trial court's decision finding sufficient evidence of the corpus delicti de novo. *State v. McPhee*, 156 Wn. App. 44, 60, 230 P.3d 284 (2010).

Mr. Mendoza-Vera argues that because the circumstances under which K.P. accompanied him to Cashmere Street were not seen by Ms. Zamora or testified to by any other witness, there was insufficient evidence that he "order[ed]" or "lur[ed]" K.P. away—and what evidence was available was as consistent with his innocence as with his guilt. His argument ignores the fact that before we assess whether the available evidence is as consistent with innocence as with guilt, we view the evidence, both direct and circumstantial, and all reasonable inferences from that evidence, in the light most favorable to the State.

It was Ms. Zamora's immediate inference upon seeing Mr. Mendoza-Vera with K.P. that he had lured her away. We find this to be a very rational inference, given the interest Mr. Mendoza-Vera had earlier shown in K.P., the fact that he knew exactly where her mother had been sitting in Lincoln Park, and yet K.P. ended up with him, outside the park. Viewed in the light most favorable to the State, the evidence supports the inference

that Mr. Mendoza-Vera lured K.P. away. As a result, it is *not* as consistent with innocence as with guilt; it is consistent only with guilt. Mr. Mendoza-Vera's objection to the admission of evidence of his statements was properly overruled.

We reverse Mr. Mendoza-Vera's conviction and remand with directions to dismiss the information without prejudice.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.

14