# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72727-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE MEJIA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 17, 2016 |

SPEARMAN, J. — After deputies from the Skagit County Sheriff's Office found automobiles in various states of dismemberment on the property where Jesse Mejia allegedly had been staying, Mejia was charged and convicted of four counts of possession of stolen motor vehicles. On appeal, Mejia argues that the search of the property was unlawful, because the deputies had neither valid permission nor authority of a valid warrant to enter the area surrounding a barn, look inside the barn through openings in the walls, search inside the barn or inside a nearby trailer. He also argues that the State failed to meet its burden of proving every element of the crimes charged and that the trial court abused its discretion by excluding two of his witnesses. We find no error and affirm the convictions but because the parties agree an error occurred in calculating Mejia's offender score, we remand for resentencing.

FACTS

William Everett rented a house on Douglas and Norma Rex's property, located at 17108 SR 20, Burlington, Washington. Along with the house, the property also included a barn with an attached shed, a plot of farmland, and a storage area for old silage. Everett kept a trailer and a couple of nonfunctioning cars on the property. His lease did not include use of the barn or the attached shed.

Everett had given Jesse Mejia permission to stay in his trailer for a couple of months. Soon Everett began to see more cars left on the property, including some that were "torn apart," and either missing bodies or parts. Verbatim Report of Proceedings (VRP) at 71. On November 12, 2013, the Skagit County Sheriff's Department received information about a stolen vehicle and a chop shop on SR 20 near Avon Allen Road. The informant told the sheriff there were two stolen Hondas and a stolen GMC van inside the barn and that Mejia had been chopping cars and grinding off the vehicle identification numbers (VIN).

Deputy Wilhonen contacted Rex before going to the property. Rex informed Deputy Wilhonen that William Everett was renting the property and that he may have friends staying there as well. Rex also indicated that "the barn was not part of the lease, there should not be anyone there, and it should also be empty of any cars or other items." Clerk's Papers (CP) at 40. It is undisputed that Everett also gave the deputies permission to come onto the property.

Deputy Wilhonen and Deputy Moses walked around the outside of the barn and looked at the cars on the cement area near the barn. The deputies

discovered a red Acura Integra that had been dismantled and taken apart. A check of the VIN indicated that it had been reported as stolen. The deputies could see other vehicles inside the barn by looking through holes in the walls. One of the vehicles near an opening, a 1992 Honda Accord, had been cut in half. The deputies were able to see the VIN on the firewall and discovered that the vehicle had been reported stolen. There was also a GMC Safari van visible from the outside. After recording and running the plate number, the deputies learned that it had also been reported stolen.

Deputy Wilhonen contacted Rex again and obtained his written permission to enter the barn. The following day, November 13, 2013, the deputies obtained a search warrant for the house, the barn, the attached shed, and the trailer. Inside the barn they found another vehicle, a 1990 Honda Accord, also reported as stolen. Inside the trailer they found identity documents for different persons, including Everett's driver's license, tax documents, and mail. Id. at 137-139.

Mejia was arrested and charged with four counts of possession of a stolen motor vehicle and one count of identity theft in the second degree. Mejia moved to suppress the evidence found in the trailer and inside and around the barn. By agreement of the parties, the trial court considered only the affidavit in support of the search warrant request and the briefs in support of and in opposition to the motion. The court found that Everett had the authority to consent, and did consent, to the deputies' initial entry onto the property. Thus, it found the deputies' presence on the property was lawful, and any observations made while on the property, including those obtained by peering through openings in the

shed, were also lawful. As a result, the court concluded that the inclusion of those observations in the affidavit in support of the search warrant did not taint the warrant or the evidence obtained thereby. Accordingly, it denied Mejia's motion.[1]

At trial, Mejia sought to offer additional witnesses after the first day of testimony to impeach and rebut Everett's testimony that his van had been stolen. The trial court instructed Mejia's counsel to provide the State with access to those witnesses. When two of the witnesses refused to speak with the State's attorney or provide information about their testimony, the State moved to exclude them. The trial court excluded the two witnesses because the State had not been given timely notice and declined to delay the trial further.

Mejia was found guilty on all four counts of possessing a stolen motor vehicle. The trial court granted Mejia's motion to dismiss the identity theft charge. At sentencing, the State calculated Mejia's offender score and submitted a statement of criminal history. Mejia was sentenced to 50 months of confinement.

## DISCUSSION

When reviewing a trial court's denial of a suppression motion, we review findings of fact for substantial evidence. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of

---

[1] The trial court also found that Mejia lacked standing to challenge the initial entry onto the property and the search of the barn. It is not necessary to resolve this question, however, because even assuming Mejia has standing, his challenge to the legality of the searches fails.

the finding. Id. Any unchallenged findings of fact are verities on appeal. State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014) (reversed and remanded, 141 Wn. App. 759, 364 P.3d 839 (2015)). We review conclusions of law de novo. Id.

## Authority to Consent

Mejia argues that the deputies conducted an unlawful search when they entered the portions of the property near and around the barn and looked into the barn through the holes in the walls. He contends that the deputies were trespassing because they did not have the owner's consent before entering the area around the barn. Id. According to Mejia, the tenant had no authority to consent to a search of the barn or the area surrounding it. Thus, he argues that the observations of the vehicles in and around the barn were unlawfully obtained. He further argues that because the affidavit in support of the search warrant relied on this evidence to establish probable cause, the warrant that issued was tainted and any evidence seized pursuant to the warrant should have been suppressed.

It is well established that if information contained in an affidavit of probable cause was obtained by an unconstitutional search, that information may not be used to support the warrant. State v. Ross, 141 Wn.2d 304, 311, 4 P.3d 130 (2000). Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." State v. Hendrickson, 129 Wn.2d 61, 70, 917 P.2d 563 (1996). Under this provision, the warrant requirement is especially important, as it is the

warrant that provides the requisite "'authority of law.'" State v. Ladson, 138 Wn.2d 343, 350, 979 P.2d 833 (1999) (quoting City of Seattle v. Mesiani, 110 Wn.2d 454, 457, 755 P.2d 775 (1988)). Exceptions to the warrant requirement are to be "'jealously and carefully drawn.'" State v. Reichenbach, 153 Wn.2d 126, 131, 101 P.3d 80 (2004) (quoting Hendrickson, 129 Wn.2d at 72). The burden of proof is on the State to show that a warrantless search or seizure falls within one of the exceptions to the warrant requirement. State v. Acrey, 148 Wn.2d 738, 746, 64 P.3d 594 (2003) (citing State v. Kinzy, 141 Wn.2d 373, 382, 5 P.3d 668 (2000)). Article I, section 7 of the Washington Constitution also provides greater protection of individual privacy than the Fourth Amendment. State v. Jackson, 150 Wn.2d 251, 259, 76 P.3d 217 (2003).

Consent to search is a recognized exception to the warrant requirement. State v. Thompson, 151 Wn.2d 793, 803, 92 P.3d 228 (2004) (citing State v. Walker, 136 Wn.2d 678, 682, 965 P.2d 1079 (1988)). It is the State's burden to establish that consent was lawfully given. Id. The State must show that (1) the consent was voluntary, (2) the person consenting had the authority to consent, and (3) the search must not exceed the scope of the consent.[2] Id. Mejia does not dispute that Everett had authority to permit the deputies to enter the property and search the residence, but he claims that the barn and its surrounding area were beyond the scope of that authority. He provides no basis for this restriction other

___

[2] CrR 3.6 governs motions to suppress evidence in criminal trials; review of this issue is therefore confined to the evidence before the trial court at the suppression hearing. Mejia argues that the State improperly relies on testimony presented at trial to show consent. The State cites to trial testimony in its brief but also cites the affidavit in support of the warrant.

than the fact that Everett did not have access to the barn or the shed. The trial court found that the area around the barn was within Everett's consent because "there is no indication that he was limited in his access to the land outside the barn." CP at 9. Mejia cites nothing in the record that disputes this finding. We agree with the trial court that Everett's consent to search the property included the areas around the barn.

Mejia next argues that the deputies exceeded the scope of the consent when they looked inside the barn through holes in the walls. He contends that the officers were required to get Rex's consent prior to looking inside the barn, and they failed to do so. We disagree. United States v. Hufford, 539 F.2d 32 (1976) (cert. denied, 429 U.S. 1002, 97 S. Ct. 533, 50 L. Ed. 2d 614 (1976), overruled in part on other grounds by U.S. v. Jones, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)) and State v. Bobic, 140 Wn.2d 250, 996 P.2d 610 (2000) are instructive.

In Hufford, government agents entered the rental unit adjacent to the defendant's, with that renter's permission, and observed the drug manufacturing materials and equipment from a crack in the wall. Id. at 33. The Ninth Circuit affirmed that the view of the defendant's property from the adjacent stall was "permissible" because "he observed what was in plain view and did not trespass." Id. at 35 (citing Harris v. United States, 390 U.S. 234, 85 S. Ct. 992, 19 L. Ed. 2d 1067 (1968)). In Bobic, contents of the defendant's storage unit were observed from an adjacent unit through a small hole in the wall. Our state supreme court found that "the detective was lawfully inside the adjoining unit because the manager had given him permission to enter," and that the observations "were

7

made without extraordinary or invasive means and could be seen by anyone renting the unit." Bobic, 140 Wn.2d at 259.

Here, the deputies similarly observed the vehicles and obtained at least one VIN number and a license plate number through openings in the walls, without trespassing or using extraordinary or invasive means. We agree with the trial court that because the vehicles were in plain view, the observations were not unlawfully obtained. The inclusion of the evidence in the affidavit to establish probable cause for issuance of the warrant was not improper and the denial of Mejia's suppression motion was not error.

## Probable Cause

Mejia argues that the officers did not have probable cause to search the trailer for evidence because its only connection to the stolen vehicles was proximity. He also argues probable cause is lacking because the affidavit "did not claim that it would be common for people to store motor vehicle parts in their home." Br. of Appellant at 20. Again, we disagree.

A search warrant may only issue upon determination of probable cause. State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Review of a determination of probable cause is de novo. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). The existence of probable cause is to be evaluated on a case-by-case basis. Thein, 138 Wn.2d at 149. Facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts. State v. Garcia, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). The application for a search warrant must be judged in the light of

8

common sense, resolving all doubts in favor of the warrant. State v. Partin, 88 Wn.2d 899, 904, 567 P.2d 1136 (1977) (citing United States v. Ventresca, 380 U.S. 102, 88 S. Ct. 741, 13 L. Ed. 2d 684 (1965)).

Probable cause exists if the affidavit "sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." Thein, 138 Wn.2d at 140 (citing State v. Cole, 128 Wn.2d 262, 286, 906 P.2d 925 (1995)). Accordingly, "'probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" Id. (quoting State. v Goble, 88 Wn. App. 503, 509, 945 P.2d 263 (1997). A valid finding of probable cause requires more than mere suspicion or personal belief that evidence of a crime will be found in the area to be searched. State v. Neth, 165 Wn.2d at 182.

Mejia argues that there is no nexus connecting the stolen vehicles and the trailer, because no vehicles would fit in the trailer, and only its proximity to the barn would suggest that it might contain parts and accessories. Citing State v. Kelley, 52 Wn. App. 581, 586, 762 P.2d 20 (1988), he argues that "[f]inding stolen property on a parcel of property does not license police to go on fishing expeditions inside residences on that corresponding parcel of property." Br. of Appellant at 20. In Kelley, the affidavit included only observations about the two garages and barn on the property, not the home. The court rejected the State's argument that because the affidavit established probable cause to search the outbuildings, there was also probable cause to search the residence. Id. at 586-

9

87. Mejia also cites State v. Gebaroff, 87 Wn. App. 11, 12, 939 P.2d 706 (1997), where probable cause to search a mobile home did not extend to the travel trailer, because the two were not under the same person's control. But these cases are inapposite.

Here, there was sufficient connection among Mejia, the trailer, and the crimes under investigation to establish probable cause for the warrant. The affidavit indicated that no persons or vehicles were permitted in the barn; however, vehicles identified as stolen were found in various states of disassembly in and around the barn. An electrical cord was "running from the inside of the barn to a trailer with a blue tarp over the roof parked outside of the barn," indicating that the person using the barn was also using the trailer. CP at 59. The affidavit also stated that the trailer had a license plate number but no DOL record for such a number. Mejia had been seen coming and going from the property and had previously given the property's address as his residence. Taken together, these facts provide sufficient nexus between the trailer and evidence related to the stolen and dismantled vehicles. The trial court did not err when it denied Mejia's motion to suppress on this ground.

### Sufficiency of the Evidence

Mejia points out that the to-convict instruction given in this case, without objection by the State, included as an element of the crime of possessing a stolen motor vehicle that "the defendant knowingly received, retained, possessed, concealed and/or disposed of a stolen motor vehicle...." CP at 24-27. (See also RCW 9A.56.140(1) defining "possessing stolen property.") Relying on

10

No. 72727-3-I/11

State v. Hayes, 164 Wn. App. 459, 477, 262 P.3d 538 (2011) and State v. Lillard, 122 Wn. App. 422, 93 P.3d 969 (2004), Mejia argues that as a result, under the law of the case doctrine, the State assumed the additional burden of proving each alternative definition of the crime. He also contends that the State's evidence was insufficient to prove each alternative, specifically, that he concealed and/or disposed of all of the vehicles. In its briefing to this court, the State agrees that under Hayes and Lillard, it is required to prove each alternative, but it disputes that the evidence is insufficient.[3]

Sufficiency of the evidence considers whether there was enough evidence proffered from which a jury could find beyond a reasonable doubt that the elements of the crime had been proved. State v. Berg, 181 Wn.2d 857, 872, 337 P.3d 310 (2014). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Credibility determinations are for the trier of fact and not subject to review. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Mejia's claim that the evidence is insufficient to establish that he concealed and/or disposed of vehicles at issue in this case is not well taken.

---

[3] In a statement of additional authority, the State cites State v. Makekau, 194 Wn. App. 407, 378 P.3d 577 (2016), decided after oral argument in this case. Makekau holds that even when included in the to-convict instruction, each alternative definition to "possession of stolen property" need not be proven so long as the alleged conduct "satisfied one of the disjunctive terms–received or possessed or concealed or disposed of the stolen vehicle." Id. at 420. Because neither party had an opportunity to address the applicability of Makekau to this case, we do not address it here.

11

There is sufficient evidence in the record that the vehicles had all been "disposed of,"[4] including testimony that each had been dismantled, had parts missing, and/or had been trashed inside. (See VRP (10/28/14) at 44-46, 53-55, 101, 110, 111-113, 119, 124). For example, Everett observed that the cars appearing on the property were "torn apart," "[l]ike they would take parts off the car," and "[s]ome of the bodies were gone too." Id. at 71. Deputy Moses testified that there was "a Honda Acura, a GMC van,...and... one or two other Honda type vehicles," that "looked to be cut up and dismantled, and some of them had been – just parts inside the barn." Id. at 110.

Counts I and II pertained to one 1992 Honda Accords, License No. AFM8003, the other 1990, License No. 287WFO. CP at 7-8; 24-25. Trooper Giddings testified that his report showed that the 1990 Honda Accord was "cut in half and the roof section was removed." VRP (10/28/14) at 101. While looking into the barn from the opening, Deputy Wilhonen saw that "there was a vehicle right near that opening that was cut in half, and basically it was all that was left was the firewall. . . ." Id. at 44. Detective Walker testified that inside the barn

---

[4]Both parties include portions of the following definition in their briefs:

> 1 a : to place, distribute, or arrange esp. in an orderly or systematic way (as according to a pattern) . . . b : to apportion or allot (as to particular purposes) freely or as one sees fit . . . 2 a : to transfer into new hands or to the control of someone else (as by selling or bargaining away) : relinquish, bestow . . . b (1) : to get rid of : throw away : discard . . . (2) : to treat or handle (something) with the result of finishing or finishing with ... : complete, dispatch . . . c : destroy.
> Webster's Third New International Dictionary, 654 (1993).

Br. of Appellant at 26; Br. of Respondent at 27. Mejia urges us to apply a very narrow definition of "disposed of" – specifically, to "transfer into new hands or to the control of someone else," citing Hayes as controlling authority. Br. of Appellant at 26. But Hayes is inapposite because there, the parties agreed to use that particular definition. The record reveals no such agreement in this case.

12

there was "another Honda near the corner that was completely dismantled." Id. at 113.

Regarding the vehicle involved in count III, the Blue GMC Safari, License No. 770XJU (CP 8; 26), Detective Walker testified that it "was in pretty complete order," but that "it was obviously missing a battery." VRP (10/28/14) at 88. On the other hand, the owner testified that "it had been pretty much destroyed." She said there was "a hole in the gas line. It was totally trashed inside. There had been dogs staying in it, and there was dog droppings all over that van, and it was just not drivable." Id. at 119. She also testified that the dashboard was damaged and part of it "was missing." Id. at 124.

Finally, count IV was the red Acura Integra, License No. AFM8261. Deputy Wilhonen testified that outside the barn there was "a red Acura that had been dismantled and taken apart." VRP (10/28/14) at 44. Detective Sigman testified that there was "a red Acura outside that was stolen and stripped, no license plate recovered." Id. at 167. We find the evidence in the record more than sufficient to support a finding that Mejia "disposed of" all four of the vehicles.

Along the same lines, Mejia argues that there was also insufficient evidence that he "concealed" the Acura Integra because it was found out in the open.[5] The word "conceal" is not defined in RCW 9A.56.140. But its ordinary

---

[5] In his initial brief, Mejia identifies one of the Honda Accords as having been located outside of the barn. The State argues that this contention is not supported by the record—both of the Honda Accords were identified as being located in the barn. Mejia later corrects his earlier misstatement to indicate that he is challenging the sufficiency of evidence as to the count related to the Acura Integra. As a result, the State has not had an opportunity to respond to this argument.

definition from Merriam-Webster is "to prevent disclosure or recognition of..., or to place out of sight." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 469 (2002). While the Acura was not inside the barn, it had been stripped and its license plates were missing. VRP (10/28/14) 167. This evidence is sufficient to support the jury's finding that Mejia "prevented the disclosure or recognition of" the Acura.

### Exclusion of Witnesses

The trial court excluded two of Mejia's witnesses because they were not timely disclosed. Mejia argues that in doing so the court abused its discretion and denied him a fair trial. But Mejia claims he was surprised by Everett's trial testimony and intended to call the witnesses for impeachment and rebuttal. He correctly observes that, as such, he was not required to give notice of the excluded witnesses prior to trial. State v. Finnegan, 6 Wn. App. 612, 625, 495 P.2d 674 (1972). But we may affirm on any ground supported by the record. State v. White, 137 Wn. App. 227, 230, 152 P.3d 364 (2007) (citing State v. Ellis, 21 Wn. App. 123, 124, 584 P.2d 428 (1978). And here, as the State points out, the exclusion of the witnesses was proper because the matter upon which Mejia sought to impeach Everett was collateral to any material issues at trial.

"The rule is firmly established in this state that a witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue." State v. Putzell, 40 Wn.2d 174, 183, 242 P.2d 180 (1952) (citing State v. Carpenter, 32 Wash. 254, 73 Pac. 357 (1932)). The test for whether a matter

14

is material or collateral is whether the cross-examining party is entitled to prove the matter in support of its case. Id.

Here, Mejia sought to have the excluded witnesses testify that Partida had not stolen Everett's van but that he had in fact loaned it to her. The proposed witness testimony would not have furthered Mejia's defense and would only have detracted from the issues to be decided in the case. The trial court did not err when it excluded the witnesses.

Criminal History

Mejia argues that the State improperly submitted a statement that purported to recount his criminal history, and the trial court used that information to calculate his offender score. While such a summary is prima facie evidence of the existence and validity of the convictions listed, the court must be satisfied by a preponderance of evidence that the proffered history exists and is accurate. RCW 9.94A.500(1). The State agrees that although Mejia did not object, remand for resentencing for the State to prove criminal history is the appropriate remedy.

Affirm but remand for resentencing.

Spelman, J.

WE CONCUR:

Trickey, A.C.J.

Leach, J.

15